## Anton Dwertman v. John F. Sipe and Carlton C. Sigler, Trading as Automatic Music Company.

1. FRAUD—*Must be Proved as Alleged.*—A plea of fraud and circumvention must set up the facts constituting the defense, so that the plaintiff may be apprised of the defense which he is to meet. A different state of facts can not be shown in the evidence from that set up in the plea.

**Assumpsit,** for goods sold, etc. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

COLEMAN, WILLIAMS & LINDEN and OSCAR HEBEL, attorneys for appellant.

SMITH, HELMER, MOULTON & PRICE, attorneys for appellees

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This action is brought upon a contract in all respects like that discussed in Westphal v. Sipe and Carlton (last preceding case), save date and name of vendee. The cases are alike save that, in the present, appellant filed a plea that the agent of appellee induced him to sign the contract by agreeing with him that he, the said defendant, "would be entitled to retain all collections made out of said music-box, while the same was in possession of said defendant, at his said place of business, for said plaintiffs, for the use and benefit of said defendant, all moneys that said box would collect as aforesaid over and above the sum of two dollars ($2) in each week; but that if the said box would collect no more than the said sum of two dollars ($2), that the said sum would belong to plaintiff. That said defendant agreed to said proposition, and thereupon, and then and there said agent of plaintiffs, whilst defendant was busily engaged

with his business in said saloon, handed to defendant a small sized paper writing in print, and requested defendant to attach his signature thereto, and then and there stated to defendant that the said paper only contained the necessary acknowledgment, showing that plaintiffs were to place said box in defendant's place of business, under the agreement first aforesaid, and that the same would be a receipt for said box, and then passed it to the defendant, and at the same time handed him a pen that he held in his hand, and requested him to attach his signature to the said paper, and then again repeated the character of the said paper as first represented as aforesaid, and then began to engage said defendant in rapid but pleasant conversation, as to how much money could be made out of the box and that it would prove a great success, for the purpose of putting defendant off his guard. That said defendant, putting trust and confidence in the said representations, signed the said paper without examining the same, and not observing that there was contained in the body of said paper writing, a provision making him liable for the payment of two hundred and fifty dollars ($250), and nothing was said about making a contract obligating defendant to pay plaintiffs two hundred and fifty dollars, or any suggestion to that effect.

Defendant avers, further, that he is a native of Germany, and can only read and write the English language imperfectly and with great difficulty, and he is imperfectly acquainted with the mode of transacting business by and through paper writings and contracts."

The defendant testified as follows : " At the time I signed that paper, the agent kept on talking, and one of them kept talking to me and the other one playing the music box; so he said, ' This is simply so we will know where our boxes are located at, and sign your name to this.' And I felt in my pocket to get my pencil out, and he said, ' Here is a pencil,' and he handed me that indelible lead pencil. At the time the agent came to me, he said, ' This box you take in —what above—what above $2 it takes in, over and above $2 every week, you send to us, and the balance you keep, and

the box, if it takes in $10 or $12 per week, and at any time if you don't want the box, we will take it back and give you half the money you take in.' "

" When this box was delivered I was busy at the further end of the bar. I did not have time to look what they did, but finally they wound the music box up and dropped a nickle in it, and I saw the box work all right, and then he felt in his pocket and pulled out a slip of paper. I think the paper now shown me is the paper, and I felt for my lead pencil, and he says, 'here is a lead pencil,' and the other fellow kept talking to me, and I signed my name down without reading it. He kept talking to me, and I signed it so quickly that I did not know what I signed. I could not read it if I wanted to; the agent said it was ' simply to know where our music boxes are located.' That is the amount of it. He then handed me an indelible lead pencil; he had it already in his hands, and the other fellow kept on talking to me as to how much the box would bring in, in a week; how much money I would make out of it, and then I signed it. I believed the agent when he told me it was simply a paper to show where the box was put; I had faith in what he said. He did not say anything that the paper bound me to pay $250.

I was born in Germany. I read and write the English language very little. I was a bartender in a wholesale wine house before I became engaged in the saloon business."

The evidence of fraud in inducing appellant to enter into the contract did not sustain the plea thereof. Only such fraudulent acts and practices as are alleged can be proven. Hopkins v. Woodward, 75 Ill. 62; Cole v. Opera House Co., 79 Ill. 96; Jones v. Albee, 70 Ill. 34; Salsbury v. Falk, 28 Ill. App. 297.

The judgment of the Circuit Court is affirmed.